IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

GREAT LAKES REINSURANCE (UK), PLC,  )
                                    )
            Plaintiff,              )
                                    )
v.                                  )   Case No.  CIV-06-636-D
                                    )
SEA CAT I, LLC,                     )
                                    )
            Defendant.              )

**O R D E R**

Before the Court are Plaintiff's Motion for Partial Summary Judgment [Doc. No. 49] and Defendant's Motion for Partial Summary Judgment [Doc. No. 50], pursuant to Fed. R. Civ. P. 56. Although directed at different claims, the Motions raise a common question of what law governs the issues in this case. Both Motions are fully briefed and at issue.

This insurance dispute arises from the loss of a yacht that became stranded on the Alacran Reef in the coastal waters of Mexico in January, 2006. The Complaint filed by Plaintiff Great Lakes Reinsurance (UK) PLC, a British insurer, seeks a declaratory judgment of non-coverage for the loss of the vessel and invokes federal admiralty jurisdiction under 28 U.S.C. § 1333(1).[1] Defendant Sea Cat I, LLC, an Oklahoma limited liability company that owned the vessel, asserts counterclaims of breach of contract, insurer's bad faith, and negligence *per se*, for which it seeks actual damages (including both financial loss and mental pain) and punitive damages. By its Motion, Plaintiff contends a choice-of-law provision of the marine insurance policy dictates the application of New York law to Defendant's tort counterclaims and precludes the recovery sought. Defendant contends

---

[1] The Complaint also cites Fed. R. Civ. P. 9(h), which authorizes a party who brings a claim that is within admiralty jurisdiction and also within federal subject matter jurisdiction on another ground to designate the claim as an admiralty claim for certain purposes.

the choice-of-law provision is unenforceable and, by its Motion, contends the application of Oklahoma law results in a finding of insurance coverage.

**Standard of Decision**

Summary judgment is appropriate if the pleadings, affidavits, depositions, and evidence on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id*. at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id*. If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, then all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex*, 477 U.S. at 322-23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998); Fed. R. Civ. P. 56(e). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671. The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

**Undisputed Facts**

Plaintiff and Defendant entered into a "Premier Yacht Insuring Agreement," which appears as Plaintiff's Exhibit 5 [Doc. No. 49-6] and Defendant's Exhibit 5 [Doc. No. 50-6].[2] This insurance policy provided coverage for Defendant's yacht named "Sea Cat I" from October 21, 2005, to October 21, 2006. Defendant purchased the insurance through Jack Martin & Associates, Inc., a brokerage company specializing in boat and marine insurance. The broker obtained the insurance from TL Dallas (Special Risks), Ltd., an underwriting agent of Plaintiff. The navigational limit of the policy was the east and gulf coasts of the United States and the Bahamas, not to exceed 250 miles offshore. Coverage was warranted for private and pleasure use only but permitted one paid crew member. Special conditions included one trip in October, 2005, from Tortola, British Virgin Islands to the Bahamas and, as later amended, one trip from Tortola to Corpus Christi, Texas.

The language of the policy was drafted and copyrighted by TL Dallas (Special Risks), Ltd. Defendant was unaware of the particular provisions of the policy until the document was received in Oklahoma in November, 2005, by Defendant's registered agent, Dr. Paul Leap.[3] Although not specifically discussed with Dr. Leap, the policy contains the following choice-of-law provision:

> In respect of the Underwriters subscribing to coverage . . . , it is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to substantive laws of the state of New York.

---

[2] The policy also appears in the record with Defendant's response brief as Exhibits 4 and 6 [Doc. Nos. 63-5, 63-7] and Plaintiff's response brief as Exhibit 1 [Doc. No. 64-2]. For ease of reference, it will be cited simply as the "Policy."

[3] The summary judgment record identifies Defendant's members as two trusts that are named but not otherwise identified. Defendant's citizenship for purposes of federal diversity jurisdiction depends on the citizenship of its members. *See Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) (stating the unanimous view of all circuits that have considered the issue). Thus, facts necessary to determine Defendant's citizenship are not shown by the record.

Policy at 11.  The policy provided hull coverage for "accidental physical loss of, or physical damage to the scheduled vessel which occurs during the period of this insuring agreement and within the limits set in the insuring agreement declarations page, subject to the insuring agreement provisions, conditions, warranties, deductibles and exclusions." *Id*. at 2.  The policy also provided other types of coverage, such as third party liability (including crew liability), medical payments, uninsured boaters, and personal property.

All communications with Defendant concerning the policy were made to Dr. Leap at his place of residence in Oklahoma; all actions taken by Defendant related to the policy were performed by Dr. Leap in Oklahoma; and the insurance premium was paid from Oklahoma using an Oklahoma bank account.  Plaintiff is a licensed insurer in Oklahoma and has designated the Oklahoma Insurance Commissioner as its service agent in Oklahoma.

**The Parties' Motions**

Plaintiff seeks a determination as a matter of law of each of the following contentions:  the policy's choice-of-law provision is valid and enforceable; New York law governs Defendant's tort counterclaims; no "bad faith" claim exists under New York law; no negligence claim is available under New York law based on Defendant's allegations; Defendant cannot recover actual damages for any personal injuries (embarrassment and mental pain); and punitive damages are not available.  Defendant disagrees with these contentions in all respects, except to concede that, if New York law applies, there can be no recovery under a negligence theory and to concede implicitly (by making no argument) that personal injuries are not at issue.[4]

---

[4] Defendant simply argues that actual, consequential damages and punitive damages are recoverable, even under New York law.

Defendant seeks a determination as a matter of *Oklahoma* law of each of the following contentions: the insurance policy is an all-risks policy that covers Defendant's loss of the yacht due to negligence of the crew; Plaintiff is estopped from denying coverage because it did not return Defendant's premium and knew relevant conditions when the policy was issued; and the policy term "seaworthy" is ambiguous and provides an insufficient basis for denying coverage under the circumstances. Plaintiff responds that a marine insurance policy is always governed by admiralty or maritime law and that all of Defendant's contentions regarding coverage fail.

### Federal Admiralty Law

The policy at issue provides coverage for accidental loss of or damage to a boat in all waters within limits described on the declaration page. *See* Policy at 1, 3 (defining "navigational limits," excluding damage "whilst being transported over land"). The policy is thus an ocean marine insurance policy. *See* 9A *Couch on Insurance 3d* § 137:1 (discussing modern marine insurance). The inclusion of incidental non-maritime risks in the Policy does not transform it into a general liability policy. *See Acadia Ins. Co. v. McNeil*, 116 F.3d 599, 602-03 (1st Cir. 1997).

An ocean marine insurance policy is governed by federal admiralty law. *Id.* at 601; *see Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 313 (1955); *New England Mut. Marine Ins. Co. v. Dunham*, 78 U.S. (11 Wall.) 1, 29 (1870). Defendant's apparent effort to create an exception for pleasure craft is unsupported by case law.[5] Given the existence of federal admiralty jurisdiction, federal law governs the enforceability of the choice-of-law provision. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1992) (in admiralty case, adopting federal rule for forum selection and choice-of-law provision); *see also Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585,

---

[5] Defendant relies on cases discussing whether certain principles of traditional maritime law should apply to vessels used only for private pleasure. Even in such cases, the existence of admiralty jurisdiction is acknowledged. *See, e.g., Vinson v. Cobb*, 510 F. Supp 1125, 1130 (E.D. Tenn. 2007).

589 (1991) (in admiralty, "federal law governs the enforceability of the forum-selection clause"); *Aqua-Marine Constructors, Inc. v. Banks*, 110 F.3d 663, 670 (9th Cir. 1997) ("a federal court sitting in admiralty must apply federal maritime choice-of-law rules") (citing cases); *Riley v. Kingsley Underwriting Agencies, Ltd*., 969 F.2d 953, 957 (10th Cir. 1992) (under federal question jurisdiction, federal law applied to forum selection and choice-of-law provisions). Thus, Defendant's choice-of-law arguments based on Oklahoma law are inapplicable, except to the extent federal law may require the consideration of Oklahoma law.[6]

### Choice of Law

Under federal law, the policy's choice-of-law provision is "'prima facie valid' and a party resisting enforcement carries a heavy burden of showing that the provision itself is invalid due to fraud or overreaching or that enforcement would be unreasonable and unjust under the circumstances." *Riley*, 969 F.2d at 957 (quoting *M/S Bremen*, 407 U.S. at 10). Here, Defendant contends enforcement would be unjust and unreasonable for the following reasons: Defendant had no notice of the provision at the time of contracting; the provision is contrary to Oklahoma public policy regarding insurance contracts; and the policy is an adhesion contract with which New York has no substantial relationship.[7] After careful consideration of Defendant's arguments, the Court finds the choice-of-law provision is valid and enforceable.

---

[6] Defendant's arguments in favor of applying Oklahoma conflicts of law rules based on the situs of this court in Oklahoma are based on diversity jurisdiction cases, in which a federal court must apply the forum state's substantive laws. *See* Def.'s Resp. Br. [Doc. 63] at 13 (citing *Century 21 Real Estate Corp. v. Meraj Int'l Investment Corp*., 315 F.3d 1271 (10th Cir. 2003)).

[7] Defendant also responds to Plaintiff's arguments regarding the Restatement (Second) of Conflict of Law § 187, and its several rules. The Court finds it unnecessary to employ this analysis.

### 1. Lack of Notice

Defendant argues that the choice-of-law provision was not bargained for but was included in the policy without notice. The Court finds, however, the fact that the parties did not discuss, and the insurance binder did not contain, the choice-of-law provision is of no consequence. Defendant has submitted a copy of the binder, or "Temporary Cover Note," that was issued October 12, 2005, before coverage began or the premium was paid. *See* Def.'s Resp. Br., Ex. 20 [Doc. No. 63-21]. The binder was expressly "subject to the terms and conditions in the policy wording and endorsements attached." *Id.* Here, as in *AGF Marine Aviation & Transport v. Cassin*, 544 F.3d 255, 261 (3d Cir. 2008), the binder "signaled that there would be provisions in the policy that were not explicit in the binder," and thus the policy, including its choice-of-law provision, applies to disputes arising under it.[8] Further, Defendant received a copy of the policy within 30 days after the binder was issued. The provision appears in the policy below an underlined, apparently bold-faced heading which states: "ARBITRATION & CHOICE OF LAW." *See* Policy at 11. The policy expressly permitted cancellation by either party at any time with a 10-day written notice.[9] *Id.* at 8. Defendant chose to accept the policy and to proceed under its terms, including the choice-of-law provision.

### 2. Violation of Oklahoma Public Policy

The Supreme Court has recognized that a contractual choice-of-forum (and by implication, choice-of-law) provision should not be enforced "if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *Bremen*, 407 U.S. at 15. Defendant relies on Oklahoma case law establishing tort remedies for

---

[8] Oklahoma law is not to the contrary. *See, e.g., Behar v. Certain Underwriters at Lloyds, London*, 554 F. Supp. 2d 1262, 1268 (W.D. Okla. 2008).

[9] Upon cancellation by Defendant, Plaintiff would pay "a short rate return of premium calculated as pro rata less 10%."

7

insurers' bad-faith conduct to argue that Oklahoma has a strong public policy of protecting its insureds. The Court agrees that such a public policy exists in Oklahoma but disagrees that it prevents the enforcement of the choice-of-law provision in this case. The Oklahoma Insurance Code specifically addresses such provisions and permits their inclusion in ocean marine insurance contracts.

Section 3617 of the Oklahoma Insurance Code, which appears in Article 36, prohibits an insurance policy from containing a choice-of-law provision that selects the law of a foreign jurisdiction. *See* Okla. Stat. tit. 36, § 3617.[10] However, Section 3601 determines the scope of Article 36 and expressly exempts ocean marine insurance policies from the prohibitions of Article 36. *See id*. § 3601.[11] Therefore, the Oklahoma Legislature has resolved the precise issue before the Court in favor of permitting an ocean marine insurance policy to select non-Oklahoma laws to govern insurance disputes arising under it. In the face of this express statement of Oklahoma public policy, Defendant's argument for an implied policy to the contrary must be rejected.

---

[10] This statute provides:

No policy delivered or issued for delivery in Oklahoma and covering a subject of insurance resident, located, or to be performed in Oklahoma, shall contain any condition, stipulation or agreement (1) requiring such policy to be construed according to the laws of any other state or country, except as necessary to meet the requirements of the motor vehicle financial responsibility laws or compulsory disability benefit laws of such other state or country . . . .

Ok. St. tit. 36, § 3617.

[11] This statute provides:

This article shall not apply to:

* * * *

3. Ocean marine and foreign trade insurances.

Okla. Stat. tit. 36, § 3601.

8

### 3. Adhesion Contract

The Supreme Court has approved the inclusion of forum-selection clauses in form contracts governed by admiralty law. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 589 (1991). This Court is not persuaded that a different rule should govern a choice-of-law provision. Under *Shute*, such provisions "are subject to judicial scrutiny for fundamental fairness." *Id.* at 595. However, "[o]nly a showing of inconvenience so serious as to foreclose a remedy, perhaps coupled with a showing of bad faith, overreaching or lack of notice, would be sufficient to defeat a contractual forum selection clause." *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 958 (10th Cir. 1992). In *Riley*, the court of appeals rejected a contention that an insurance form provision requiring the application of English law was unreasonable because recovery would be more difficult: "The fact that an international transaction may be subject to laws and remedies different or less favorable than those of the United States is not a valid basis to deny enforcement, provided that the law of the chosen forum is not inherently unfair." *Id*.

Similar to *Riley*, Defendant has not presented facts to establish that Plaintiff selected New York law in order to discourage legitimate claims or to deprive Defendant of a remedy. New York is within the geographical boundaries of the policy and the location of Plaintiff's service agent under the policy, which involves an underwriter and an insurer located in the United Kingdom. Undoubtedly, the insurer utilizes this form policy in transactions with insureds located throughout the United States. The selection of a state that, unlike Oklahoma, has substantive laws and precedents dealing with maritime insurance contracts appears entirely reasonable under the circumstances. The fact that New York substantive law may be less favorable or provide different remedies than Oklahoma law is an insufficient reason to deny enforcement of the policy's choice-of-

law provision. Therefore, the Court finds Defendant has not met its burden to show that the choice-of-law provision is unenforceable.

**Coverage Issues**

Under federal admiralty law and the terms of the choice-of-law provision, Defendant's arguments regarding insurance coverage under Oklahoma law have no force. The warranty of seaworthiness is a well-established and entrenched principle of admiralty law. It attaches at the inception of a time policy and at the commencement of the voyage insured under a voyage policy. *See Saskatchewan Government Ins. Office v. Spot Pack, Inc.*, 242 F.2d 385, 388 (5th Cir. 1957). The duty of utmost good faith and disclosure of all facts material to the insured risk – the doctrine of *uberrimae fidei* – is also a well-established and entrenched principle of admiralty law. *See AGF Marine Aviation & Transport v. Cassin*, 544 F.3d 255, 263 (3rd Cir. 2008) ("the doctrine of *uberrimae fidei* is well entrenched and therefore controls this dispute") (citing cases). The question of whether such a warranty or duty was breached in this case is not presented for decision.

Defendant's position that Plaintiff is estopped to deny coverage due to its retention of the premium fails.[12] Under admiralty and New York law, "warranties in maritime insurance contracts must be strictly complied with, even if they are collateral to the primary risk that is the subject of the contract, if the insured is to recover." *Commercial Union Ins. Co. v. Flagship Marine Services, Inc.*, 190 F.3d 26, 31 (2d Cir. 1999). Defendant points to no principle of admiralty or New York law, and the Court has found none, that would require Plaintiff to tender a part of the insurance premium before seeking a determination of non-coverage due to a breach of warranty or an event

---

[12] It would fail even under Oklahoma law because Plaintiff has not asserted a claim for rescission of the insurance policy.

Case 5:06-cv-00636-D   Document 67   Filed 08/31/09   Page 11 of 13

of nondisclosure. In short, the Court finds Defendant has not established a factual or legal basis for a finding as a matter of law that Plaintiff is estopped to deny coverage.[13]

## Counterclaims

Defendant's counterclaims depend on state law and, by operation of the choice-of-law provision, the law of New York.

### 1.   Insurer's Bad Faith

The Court of Appeals of New York has recognized that "implicit in contracts of insurance is a covenant of good faith and fair dealing, such that a reasonable insured would understand that the insurer promises to investigate in good faith and pay covered claims." *Bi-Economy Market, Inc. v. Harleysville Ins. Co.*, 886 N.E.2d 127, 131 (N.Y. 2008). Under appropriate circumstances, a breach of the insurer's duty of good faith may warrant a recovery of consequential damages in addition to the insured loss, including "additional damages caused by a carrier's injurious conduct – in this case, the insurer's failure to timely investigate, adjust and pay the claim." *Id.* at 132. However, the recovery remains one under the contract. Consequential damages are "not to punish the insurer, but to give the insured its bargained-for benefit." *Id.* Such damages are "designed to compensate a party for reasonably foreseeable damages" that were reasonably contemplated by the parties at the time the contract was made. *Id.* at 131. An insurer's breach of the duty is not an independent tort; punitive damages are not recoverable. *See id.* at 132.

Because New York does not recognize an independent tort of insurer's bad faith, Defendant cannot recover under such a theory. However, as permitted under *Harleysville* upon proper proof,

---

[13] The Court also notes Defendant has not asserted the affirmative defense of estoppel in its Answer [Doc. No. 5].

Defendant may recover consequential damages resulting from any bad faith conduct by Plaintiff in denying coverage for any insured loss.

### 2. Negligence Per Se

Defendant's claim of negligence *per se* is based solely on principles of Oklahoma law. *See* Def.'s Resp. Br. [Doc. No. 63] at 28. Defendant concedes that, under the New York precedents cited by Plaintiff, no negligence claim is available. *See*, *e.g.*, *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 193-94 (N.Y. 1987). Further, Defendant points to no New York statute that allegedly was violated to support a claim of negligence *per se*. Therefore, the Court finds Plaintiff is entitled to summary judgment on Defendant's negligence counterclaim.

### 3. Punitive Damages

New York's highest court has stated that "the standard for awarding punitive damages in first-party insurance actions is 'a strict one,' and this extraordinary remedy will be available 'only in a limited number of instances.'" *Rocanova v. Equitable Life Assur. Soc'y*, 634 N.E.2d 940, 944 (N.Y. 1994) (citations omitted). It has explained those limited circumstances as follows:

> Punitive damages are not recoverable for an ordinary breach of contract as their purpose is not to remedy private wrongs but to vindicate public rights. However, where the breach of contract also involves a fraud evincing a "high degree of moral turpitude" and demonstrating "such wanton dishonesty as to imply a criminal indifference to civil obligations", punitive damages are recoverable if the conduct was "aimed at the public generally." Punitive damages are available where the conduct constituting, accompanying, or associated with the breach of contract is first actionable as an independent tort for which compensatory damages are ordinarily available, and is sufficiently egregious under the *Walker* standard to warrant the additional imposition of exemplary damages. Thus, a private party seeking to recover punitive damages must not only demonstrate egregious tortious conduct by which he or she was aggrieved, but also that such conduct was part of a pattern of similar conduct directed at the public generally.

*Id*. at 943-44 (citations omitted); *see also New York Univ. v. Continental Ins. Co.*, 662 N.E.2d 763, 767-68 (N.Y. 1995).

12

Applying these principles to the alleged facts of this case, the Court finds Defendant may not recover punitive damages, which are available only in limited, egregious circumstances not present here. Therefore, Plaintiff is entitled to a summary adjudication of the issue of punitive damages.

### 4.  Damages for Personal Injuries

Defendant alleges it "suffered embarrassment and mental pain" for which it seeks actual damages under its counterclaim. *See* Answer [Doc. No. 5] at 4, ¶ 9. Defendant is a business entity, a legal fiction. It cannot suffer personal injuries like emotional anguish. *See Northern Pac. R. Co. v. Whalen*, 149 U.S. 157, 163 (1893) ("As a corporation cannot be said to have life or health or senses, the only ground on which it can obtain either damages or an injunction, under [nuisance statutes], is injury to its property."). Defendant's allegation of, and its claim to recover damages for, such injuries is frivolous. Therefore, Plaintiff is entitled to a summary adjudication of the issue of actual damages for personal injuries.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Partial Summary Judgment [Doc. No. 49] is GRANTED to the extent that it seeks a determination as a matter of law that the choice-of-law provision of the insurance policy is enforceable, that Defendant cannot recover under its tort law counterclaims of bad faith and negligence, and that Defendant cannot recover punitive damages or damages for personal injuries. Plaintiff's claim for a declaration of non-coverage and Defendant's breach-of-contract counterclaim remain for trial.

IT IS FURTHER ORDERED that Defendant's Motion for Partial Summary Judgment on the Issue of Coverage [Doc. No. 50] is DENIED.

IT IS SO ORDERED this 31st day of August, 2009.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE